**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **U.S. WELL SERVICES, LLC, U.S. WELL SERVICES HOLDINGS, LLC, PROFRAC MANUFACTURING, LLC, PROFRAC SERVICES, LLC** | **Civil Action No. 4:24-cv-00839** |
| **Plaintiffs,** | |
| **vs.** | **JURY TRIAL DEMANDED** |
| **LIBERTY ENERGY, INC., LIBERTY OILFIELD SERVICES LLC, LIBERTY ADVANCED EQUIPMENT TECHNOLOGIES LLC, ST9 GAS AND OIL LLC,** | |
| **Defendants.** | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs U.S. Well Services, LLC, U.S. Well Services Holdings, LLC (collectively, "USWS"), ProFrac Manufacturing, LLC ("ProFrac Manufacturing"), and ProFrac Services, LLC ("ProFrac") (collectively, "Plaintiffs") file this Complaint for Patent Infringement against Liberty Energy, Inc., Liberty Oilfield Services LLC, and Liberty Advanced Equipment Technologies LLC (collectively, "Liberty") and ST9 Oil and Gas LLC ("ST9") (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      This complaint asserts claims for breach of contract, trade secret misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, *et seq.* (the "DTSA") and the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001 to 134A.008

1

(the "TUTSA"), and patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*., including §§ 271, 281, 284, and 285. This action involves U.S. Patent Nos. 11,459,863, 10,598,258, 11,091,992, 10,655,435, and 11,208,878.

## THE PARTIES

2.      U.S. Well Services, LLC is a limited liability company duly organized under the laws of the state of Delaware. Its principal place of business is located at 333 Shops Boulevard, Willow Park, Texas 76087.

3.      U.S. Well Services Holdings, LLC is a limited liability company duly organized under the laws of the state of Delaware. Its principal place of business is located at 333 Shops Boulevard, Willow Park, Texas 76087.

4.      ProFrac Manufacturing, LLC is a limited liability company duly organized under the laws of the state of Texas. Its principal place of business is located at 333 Shops Boulevard, Willow Park, Texas 76087.

5.      ProFrac Services, LLC is a limited liability company duly organized under the laws of the state of Texas. Its principal place of business is located at 333 Shops Boulevard, Willow Park, Texas 76087.

6.      Upon information and belief, Liberty Energy, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 950 17th Street, Suite 2400, Denver, CO 80202. Upon information and belief, Liberty Energy, Inc. sells, offers to sell, and/or uses products and services throughout the United States used for hydraulic fracturing and related services for use in oil and natural gas exploration and production, including in this judicial district.

7.      Upon information and belief, Liberty Oilfield Services LLC is a subsidiary of Liberty Energy, Inc. and is a limited liability company organized under the laws of the State of Texas with a regular and established place of business at 800 Gessner Rd. Suite 1000 Houston, TX 77024.

8.      Upon information and belief, Liberty Advanced Equipment Technologies (formerly ST9 Gas and Oil LLC) is a subsidiary of Liberty Oilfield Services LLC and is a limited liability company organized under the laws of the state of Texas with a regular and established place of business at 318 Magnolia Business Park Dr., Magnolia, TX 77354.

## JURISDICTION AND VENUE

9.      The claims for patent infringement arise under the patent laws of the United States, 35 U.S.C. § 271.

10.      The Court has federal-question subject matter jurisdiction over Plaintiffs' patent infringement claims arising under the patent laws of the United States pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (patents). The Court has federal-question subject matter jurisdiction over Plaintiffs' trade secret misappropriation claim arising under the DTSA pursuant to 28 U.S.C. §§ 1331 (federal question).

11.      The Court has supplemental jurisdiction over USWS's breach of contract, TUTSA, and other state law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy under Article III of the United States Constitution and are based on the same underlying nucleus of fact.

12.      The parties' NDA (as defined below) underlying this matter further provides that the exclusive jurisdiction for litigation of any dispute arising out of the NDA shall be litigated by

the parties in the federal or state courts located in Houston, Texas. This Court has personal jurisdiction over Defendants. Defendants have continuous and systematic business contacts with the State of Texas. Defendants, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), conduct business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) products and/or services in the State of Texas and the Southern District of Texas. Defendants maintain locations in Houston, Texas and Magnolia, Texas and are responsible for sales, offers to sell, and/or use of infringing products and services in the United States, including in the Southern District of Texas. Defendants regularly do business or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from products and/or services provided to individuals in the State of Texas.

13.     Defendants, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), have purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents (as defined below) with the intention and expectation that they will be purchased and used by consumers in the Southern District of Texas. These products and/or services have been and continue to be purchased and used by exploration and production companies in the Southern District of Texas.

14.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) because Defendants haves committed acts of infringement and have a regular and established place of business in this District. Defendants have at least two physical locations in the Southern District of Texas, at an office in Houston at 800 Gessner Rd. Suite 1000 and at a manufacturing facility in Magnolia at 318 Magnolia Business Park Drive. Upon information and belief, Defendants have

hundreds or thousands of employees working throughout the state of Texas, including within the Southern District of Texas, and in cities such as Midland, Magnolia, Cibolo, Plano, and many other cites spread out across the state. Upon information and belief, many of these employees across the state work in various capacities on the accused products including digiFrac, and many of these employees working on the accused product also work out of Defendants' Houston office, at 800 Gessner Road Suite 1000, as well as the manufacturing facility in Magnolia at 318 Magnolia Business Park Drive. Upon information and belief, Defendants manufacture digiFrac at the Magnolia facility.

15.     Upon information and belief, the products accused of infringement in this case are manufactured by or on behalf of Defendants.

## FACTUAL BACKGROUND

### I.   USWS's Breakthrough E-Frac Technology

16.     This case involves technology for systems, services, and products for oil and gas exploration and production, particularly relating to well stimulation.

17.     USWS was founded in 2012 with its headquarters in Houston, Texas and provides services at well sites to exploration companies, including hydraulic fracturing services.

18.     In July 2014, USWS successfully deployed Clean Fleet, the first all-electric hydraulic fracturing (E-Frac) system in the fracturing industry. USWS earned public acclaim for this breakthrough, including a New Technology Development Award at the Annual Oil & Gas Awards in March 2015. Clean Fleet has saved USWS customers millions of dollars in operational costs and led to long-term contracts with some of the largest exploration and production companies in the world.

19.     USWS has applied for and obtained dozens of patents relating to E-Frac and continues to be a leading innovator in the oilfield services industry. Owing to USWS's operational and technological success relating to E-Frac, USWS was purchased in 2022 by ProFrac's parent company, which boasts one of the largest number of fleets in the well stimulation industry.

**II.     Relationship Between the Parties**

20.     Liberty was founded in 2011, with its headquarters in Denver, Colorado, and offices in Houston and Magnolia, Texas.

21.     Liberty provides hydraulic fracturing services and related technologies in oil and natural gas basins, including the Eagle Ford Shale which underlies portions of south Texas, including in the Southern District of Texas.

22.     Liberty advertises that it offers customers hydraulic fracturing services, together with complementary services including wireline services, proppant delivery solutions, data analytics, related goods, and technologies that will facilitate lower emission completions. *See* Liberty 2022 Annual Report and 10K at 36 (March 10, 2023).[1] Included in these services are hydraulic fracturing equipment and services that power pumps with natural gas and electricity, which Liberty markets as "digiFrac." *Id*. at 14.

23.     Liberty acquired ST9 on or around 2018 and claims to have begun developing digiFrac that year. *Id*. at 26.

---

[1] Available at https://investors.libertyfrac.com/~/media/Files/L/Liberty-OilField-IR-V2/financial-information/2020-04-21-liberty-energy-inc-audit-committee-charter-amended.pdf.

24.     ST9 was founded by Chris Buckley in 2017[2] and publicly launched[3] at the 2017 Offshore Technology Conference ("OTC"). That year, ST9 offered a number of products used in hydraulic fracturing, including well service pumps and well stimulation pumps. [4]

25.     On May 25, 2017, ST9 and USWS entered into a Mutual Confidentiality and Nondisclosure Agreement (Exhibit 1) (the "NDA") for the purpose of evaluating a possible business relationship between the parties. NDA, § 1. The NDA remains in force today. To that end, the NDA imposed on the party receiving confidential information strict confidentiality obligations with respect to all information disclosed subject to the agreement.

26.     USWS engaged ST9 in reliance on ST9's promise to maintain the secrecy of both confidential information provided by USWS and work product created by ST9 for USWS.

27.     Among other restrictions, the NDA states that the party receiving confidential information "will not use it to compete in any direct or indirect manner against the Disclosing Party or deliberately disclose it to others or use such Confidential Information for any reason other than the Purpose or as otherwise authorized under this Agreement…." *Id*. at § 3.1.

28.     In or around October 2017, Mr. Buckley and USWS personnel began discussions regarding "Project FOaLT." The concepts disclosed to Mr. Buckley and ST9 by USWS personnel included a next generation electric hydraulic fracturing fleet utilizing pumps with higher multiples of plungers than conventional fracturing pumps, which use either three or five plungers.

---

[2] *See* https://web.archive.org/web/20231002004118/https://st9go.com/about/.
[3] *See* https://web.archive.org/web/20170503054917/http://www.chron.com/jobs/article/New-projects-products-technology-abound-at-OTC-11107668.php.
[4] *See* https://www.worldpumps.com/content/news/former-weir-vp-launches-new-company-to-serve-upstream-oil-gas-sector.

29.     Upon learning that ST9 had been acquired by Liberty, USWS ended the collaboration. However, the NDA was still in place. Subsequently, ST9 made a LinkedIn post advertising seven- and nine-plunger pumps. Counsel for USWS then sent a letter to Liberty alleging breach of the NDA by disclosing USWS's confidential information. Mr. Buckly responded stating that he would look into the matter and follow-up within thirty days, but no follow-up was ever received by USWS.

30.     Liberty and ST9 launched digiFrac in 2021, which incorporates many of the elements originally disclosed to ST9 by USWS personnel in violation of the NDA.[5]

### DEFENDANTS AND THEIR INFRINGING PRODUCTS AND SERVICES

31.     Defendants market digiFrac to customers, which they allege is "the industry's first purpose-built fully integrated electric frac pump with high power density and significantly lower emissions relative to the best next generation frac technology available in the market."[6] Defendants also describe digiFrac as utilizing ten small electric motors to power each pump.[7]

---

[5] *See* https://investors.libertyfrac.com/press-releases/2021/07-07-2021-113010665.
[6] *See* https://investors.libertyfrac.com/press-releases/2021/07-07-2021-113010665.
[7] Available at https://investors.libertyfrac.com/~/media/Files/L/Liberty-OilField-IR-V2/financial-information/2020-04-21-liberty-energy-inc-audit-committee-charter-amended.pdf.

8



32.     Defendants further describe digiFrac as containing bespoke gear reducer transmissions, dual VFDs for rectifying and modulating power to the motors, and as having a septuplex (seven-plunger) fluid end.[8] It is further shown that the digiFrac system is available on a trailer containing adjacent areas at different heights, one area containing the pump and electric motors.

---

[8] *See* digiFrac Product Specifications, available at
https://web.archive.org/web/20221129010242/https://st9go.com/wp-content/uploads/2021/11/20-ST9-0035_ProductSheet_digiFrac.pdf.



FULLY-INTEGRATED RIG WITH RETRACTABLE HOUSING

33.     The aforementioned confidentiality obligations remain in full force under the terms of the NDA, which has never been terminated by either party. Moreover, by its terms, the foregoing obligations survive even termination of the NDA. The NDA expressly acknowledges that breach of confidentiality obligations may cause irreparable harm for which money is inadequate compensation, and that the disclosing party may be entitled to equitable relief by way of injunction.

## THE ASSERTED PATENTS

34.     Plaintiffs are the owners in right, title, and interest in and to multiple United States patents and patent applications, including U.S. Patent Nos. 11,459,863 (the "'863 Patent"),

10,598,258 (the "'258 Patent"), 11,091,992 (the "'992 Patent"), 10,655,435 (the "'435 Patent"), and 11,208,878 (the "'878 Patent") (collectively, the "Asserted Patents"). The Asserted Patents are valid and enforceable, and the inventions claimed in the Asserted Patents were novel, non-obvious, unconventional, and non-routine at least as of their respective filing dates.

35.     On October 4, 2022, the '863 Patent, entitled "Electric Powered Hydraulic Fracturing Pump System With Single Electric Powered Multi-Plunger Fracturing Pump," was duly and legally issued. Plaintiffs own the entire right, title, and interest in the '863 Patent and are entitled to sue for past and future infringement. A true and correct copy of the '863 Patent is attached as Exhibit 2.

36.     On March 24, 2020, the '258 Patent, entitled "Multi-Plunger Pumps And Associated Drive Systems," was duly and legally issued. Plaintiffs own the entire right, title, and interest in the '258 Patent and are entitled to sue for past and future infringement. A true and correct copy of the '258 Patent is attached as Exhibit 3.

37.     On August 17, 2021, the '992 Patent, entitled "System For Centralized Monitoring And Control Of Electric Powered Hydraulic Fracturing Fleet," was duly and legally issued. Plaintiffs own the entire right, title, and interest in the '992 Patent and are entitled to sue for past and future infringement. A true and correct copy of the '992 Patent is attached as Exhibit 4.

38.     On May 19, 2020, the '435 Patent, entitled "Smart Fracturing System And Method" was duly and legally issued. Plaintiffs own the entire right, title, and interest in the '435 Patent and are entitled to sue for past and future infringement. A true and correct copy of the '435 Patent is attached as Exhibit 5.

39.     On December 28, 2021, the '878 Patent, entitled "Modular Switchgear System And Power Distribution For Electric Oilfield Equipment," was duly and legally issued. Plaintiffs own the entire right, title, and interest in the '878 Patent and are entitled to sue for past and future infringement. A true and correct copy of the '878 Patent is attached as Exhibit 6.

## COUNT I: CLAIM FOR PATENT INFRINGEMENT OF THE '863 PATENT

40.     Plaintiffs repeat and reallege the allegations in paragraphs 1–32 and 34–39 as if fully set forth herein.

41.     Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '863 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '863 Patent including, but not limited to, hydraulic fracturing systems and components thereof.

42.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '863 Patent include at least the digiFrac product line. The product listed is exemplary, and Plaintiffs will be able to provide a more comprehensive list after discovery.

43.     For example, upon information and belief, Defendants' digiFrac system infringes at least claim 1 of the '863 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States their electric hydraulic fracturing equipment and services and thus directly infringe the '863 Patent.

## COUNT II: CLAIM FOR PATENT INFRINGEMENT OF THE '258 PATENT

44.     Plaintiffs repeat and reallege the allegations in paragraphs 1–32 and 34-39 as if fully set forth herein.

12

45.     Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '258 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '258 Patent including, but not limited to, hydraulic fracturing systems and components thereof.

46.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '258 Patent include at least the digiFrac product line. The product listed is exemplary, and Plaintiffs will be able to provide a more comprehensive list after discovery.

47.     For example, upon information and belief, Defendants' digiFrac system infringes at least claim 1 of the '258 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States their electric hydraulic fracturing equipment and services and thus directly infringe the '258 Patent.

## COUNT III: CLAIM FOR PATENT INFRINGEMENT OF THE '992 PATENT

48.     Plaintiffs repeat and reallege the allegations in paragraphs 1–32 and 34–39 as if fully set forth herein.

49.     Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '992 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '992 Patent including, but not limited to, hydraulic fracturing systems and components thereof.

13

50.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '992 Patent include at least the digiFrac product line. The product listed is exemplary, and Plaintiffs will be able to provide a more comprehensive list after discovery.

51.     For example, upon information and belief, Defendants' digiFrac system infringes at least claim 1 of the '992 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States their electric hydraulic fracturing equipment and services and thus directly infringe the '992 Patent.

**COUNT IV: CLAIM FOR PATENT INFRINGEMENT OF THE '435 PATENT**

52.     Plaintiffs repeat and reallege the allegations in paragraphs 1–32 and 34–39 as if fully set forth herein.

53.     Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '435 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '435 Patent including, but not limited to, hydraulic fracturing systems and components thereof.

54.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '435 Patent include at least the digiFrac product line. The product listed is exemplary, and Plaintiffs will be able to provide a more comprehensive list after discovery.

55.     For example, upon information and belief, Defendants' digiFrac system infringes at least claim 1 of the '435 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States their electric hydraulic fracturing equipment and services and thus directly infringe the '435 Patent.

14

## COUNT V: CLAIM FOR PATENT INFRINGEMENT OF THE '878 PATENT

56.     Plaintiffs repeat and reallege the allegations in paragraphs 1–32 and 34–39 as if fully set forth herein.

57.     Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '878 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '878 Patent including, but not limited to, hydraulic fracturing systems and components thereof.

58.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '878 Patent include at least the digiFrac product line. The product listed is exemplary, and Plaintiffs will be able to provide a more comprehensive list after discovery.

59.     For example, upon information and belief, Defendants' digiFrac system infringes at least claim 1 of the '878 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States their electric hydraulic fracturing equipment and services and thus directly infringe the '878 Patent.

## COUNT VI: CLAIM FOR VIOLATION OF THE DTSA, 18 U.S.C. § 1832, *et seq.*

60.     Plaintiffs repeat and reallege the allegations in paragraphs 1–33 as if fully set forth herein.

61.     Project FOaLT information that Plaintiffs provided to Defendants includes technical and engineering information, both tangible and intangible.

62.     At all times relevant, Plaintiffs have taken reasonable measures to keep Project FOaLT information secret. Among other measures, Plaintiffs maintained an acceptable use policy,

a physical security policy, a password security policy, a cloud computing policy, a third party management policy, an employee laptop and computer policy, and a malware incident response policy.

63.     Plaintiffs' Project FOaLT information disclosed to Defendants included at least the following trade secrets (as that term is defined in 18 U.S.C. § 1839(3)): Project FOaLT technical specifications; Project FOaLT design work; Project FOaLT functional plans; and proprietary knowledge about the design, testing, manufacturing, and assembly of electric hydraulic fracturing equipment.

64.     Much of this trade secret information was disclosed in documentary or presentation form to Defendants. The documents and information provided to Defendants as alleged in this paragraph derive actual and potential independent economic value from not being generally known to, and not being readily ascertainable through proper means by, third parties.

65.     Without Plaintiffs' consent, Defendants used Plaintiffs' Project FOaLT trade secret information. Defendants were aware that Plaintiffs' Project FOaLT information comprised trade secrets, and that it was improper to disclose and/or use Plaintiffs' trade secrets in the manner alleged.

66.     Defendants' conduct violates the DTSA.

67.     Defendants' unauthorized use of Plaintiffs' trade secret information has proximately caused Plaintiffs irreparable harm that can only be remedied by injunctive relief.

68.     Defendants' conduct was willful, malicious, and carried out with conscious disregard for Plaintiffs' rights.

69.     Plaintiffs are entitled to damages for actual loss and unjust enrichment, exemplary damages, attorney's fees, and injunctive relief on account of Defendants' violation of the DTSA.

## COUNT VII: CLAIM FOR VIOLATION OF THE TUTSA, Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001, TO 134A.008

70.     Plaintiffs repeat and reallege the allegations in paragraphs 1–33 as if fully set forth herein.

71.     Project FOaLT information that Plaintiffs provided to Defendants includes technical and engineering information, both tangible and intangible.

72.     At all times relevant, Plaintiffs have taken reasonable measures to keep Project FOaLT information secret. Among other measures, Plaintiffs maintained an acceptable use policy, a physical security policy, a password security policy, a cloud computing policy, a third party management policy, an employee laptop and computer policy, and a malware incident response policy.

73.     Plaintiffs' Project FOaLT information disclosed to Defendants included at least the following trade secrets (as that term is defined in Section 134A(6) of the Texas Civil Practice and Remedies Code: Project FOaLT technical specifications; Project FOaLT design work; Project FOaLT functional plans; and proprietary knowledge about the design, testing, manufacturing, and assembly of electric hydraulic fracturing equipment.

74.     Much of this trade secret information was disclosed in documentary or presentation form to Defendants. The documents and information provided to Defendants as alleged in this paragraph derive actual and potential independent economic value from not being generally known to, and not being readily ascertainable through proper means by, third parties.

75.     Without Plaintiffs' consent, Defendants used Plaintiffs' Project FOaLT trade secret information. Defendants were aware that Plaintiffs' Project FOaLT information comprised trade secrets, and that it was improper to disclose and/or use Plaintiffs' trade secrets in the manner alleged.

76.     Defendants' conduct violates the TUTSA.

77.     Defendants' unauthorized use of Plaintiffs' trade secret information has proximately caused Plaintiffs irreparable harm that can only be remedied by injunctive relief.

78.     Defendants' conduct was willful, malicious, and carried out with conscious disregard for Plaintiffs' rights.

79.     Plaintiffs are entitled to damages for actual loss and unjust enrichment, exemplary damages, attorney's fees, and injunctive relief on account of Defendants' violation of the TUTSA.

## COUNT VIII: CLAIM FOR BREACH OF CONTRACT

80.     Plaintiffs repeat and reallege the allegations in paragraphs 1–33 as if fully set forth herein.

81.     Plaintiffs and Defendants are parties to a valid, existing contract: the NDA.

82.     Plaintiffs have performed their obligations under the NDA.

83.     Defendants have breached their obligations under the NDA by making unauthorized disclosures and/or use of USWS's confidential information.

84.     Defendants' breaches have proximately caused USWS and ProFrac foreseeable monetary harm in an amount to be proven at trial.

85.     Defendants' breaches have proximately caused Plaintiffs irreparable injury that can only be remedied by an order of injunctive relief.

18

**DEMAND FOR JURY TRIAL**

86.     Plaintiffs hereby demand a trial by jury on all claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

A.  Entry of judgment in favor of Plaintiffs against Defendants on all counts;

B.  A judgment and order that Defendants infringe the Asserted Patents;

C.  A judgment and order that the Asserted Patents are valid and enforceable;

D.  Award Plaintiffs damages in an amount adequate to compensate Plaintiffs for Defendants' infringement of the Asserted Patents, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

E.  A judgment and order awarding Plaintiffs damages caused by Defendants' breach of contract;

F.  A judgment and order awarding Plaintiffs damages caused by Defendants' misappropriation of trade secrets and/or disgorgement of any ill-gotten profits and/or a reasonable royalty;

G.  Award enhanced damages pursuant to 35 U.S.C. § 284;

H.  Award Plaintiffs pre-judgment and post-judgment interest to the full extent allowed under the law, as well as their costs;

I.  Enter an order finding that this is an exceptional case and awarding Plaintiffs their reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

J. Enter a permanent injunction against all of Defendants' products found to infringe the Asserted Patents;

K. An order requiring Defendants to comply with the NDA, including § 3.6 prohibiting the use or construction of any products embodying any confidential information or the inventions of the Plaintiffs, for use or sale by the Defendants or any other purpose;

L. An order permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, affiliated companies, assigns and successors in interest, and all persons and entities acting in concert with them, from misappropriating Plaintiffs' trade secrets;

M. An order permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, affiliated companies, assigns and successors in interest, and all persons and entities acting in concert with them, from breaching the NDA;

N. Award, in lieu of an injunction, a compulsory forward royalty for infringement of the Asserted Patents;

O. Order an accounting of damages;

P. An award of attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code Section 38.001, and the applicable provisions under the DTSA and TUTSA; and

Q. Award such other relief, including equitable relief, as the Court may deem appropriate and just under the circumstances.

**DATED**: March 6, 2024

Respectfully submitted,

*/s/ Thomas M. Melsheimer*
**Thomas M. Melsheimer**
Texas Bar No. 13922550
S.D. Bar No. 23709
TMelsheimer@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

**ATTORNEY IN CHARGE**

**Rex A. Mann**
Texas Bar No. 24075509
S.D. Bar No. 1750609
RMann@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

**E. Danielle T. Williams** (*pro hac vice* forthcoming*)*
North Carolina Bar No. 23283
DWilliams@winston.com
**WINSTON & Strawn LLP**
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: (704) 350-7790
Facsimile: (704) 350-7800

**Richard T. McCarty**
Texas Bar No. 24074675
S.D. Bar No. 1147407
RMcCarty@winston.com
**J. Tyler Boyce** (District admission forthcoming*)*
Texas Bar No. 24127214
TBoyce@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400

Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

**ATTORNEYS FOR PLAINTIFFS**