# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| **U.S. WELL SERVICES, LLC, U.S. WELL SERVICES HOLDINGS, LLC, PROFRAC MANUFACTURING, LLC, PROFRAC SERVICES, LLC**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**LIBERTY ENERGY, INC., LIBERTY OILFIELD SERVICES LLC, LIBERTY ADVANCED EQUIPMENT TECHNOLOGIES LLC, ST9 GAS AND OIL LLC, ST9, INC.,**<br><br>**Defendants.** | **Civil Action No. 4:24-CV-00839-KPE**<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs U.S. Well Services, LLC, U.S. Well Services Holdings, LLC (collectively, "USWS"), ProFrac Manufacturing, LLC ("ProFrac Manufacturing"), and ProFrac Services, LLC ("ProFrac") (collectively, "Plaintiffs") file this Complaint for Patent Infringement against Liberty Energy, Inc., Liberty Oilfield Services LLC, and Liberty Advanced Equipment Technologies LLC (collectively, "Liberty"), ST9 Gas and Oil LLC , and ST9, Inc (collectively, "ST9") (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      This complaint asserts claims for breach of contract, trade secret misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, *et seq.* (the "DTSA") and the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001 to 134A.008

1

(the "TUTSA"), and patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*., including §§ 271, 281, 284, and 285. This action involves U.S. Patent Nos. 11,959,533, 10,598,258, 11,091,992, 10,655,435, and 11,208,878.

## THE PARTIES

2.      U.S. Well Services, LLC is a limited liability company duly organized under the laws of the state of Delaware. Its principal place of business is located at 333 Shops Boulevard, Willow Park, Texas 76087.

3.      U.S. Well Services Holdings, LLC is a limited liability company duly organized under the laws of the state of Delaware. Its principal place of business is located at 333 Shops Boulevard, Willow Park, Texas 76087.

4.      ProFrac Manufacturing, LLC is a limited liability company duly organized under the laws of the state of Texas. Its principal place of business is located at 333 Shops Boulevard, Willow Park, Texas 76087.

5.      ProFrac Services, LLC is a limited liability company duly organized under the laws of the state of Texas. Its principal place of business is located at 333 Shops Boulevard, Willow Park, Texas 76087.

6.      Upon information and belief, Liberty Energy, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 950 17th Street, Suite 2400, Denver, CO 80202. Upon information and belief, Liberty Energy, Inc. sells, offers to sell, and/or uses products and services throughout the United States used for hydraulic fracturing and related services for use in oil and natural gas exploration and production, including in this judicial district.

7.     Upon information and belief, Liberty Oilfield Services LLC is a subsidiary of Liberty Energy, Inc. and is a limited liability company organized under the laws of the State of Texas with a regular and established place of business at 800 Gessner Rd. Suite 1000 Houston, TX 77024.

8.     Upon information and belief, Liberty Advanced Equipment Technologies (formerly ST9 Gas and Oil LLC) is a subsidiary of Liberty Oilfield Services LLC and is a limited liability company organized under the laws of the state of Texas with its principal place of business at 331 Corporate Woods Dr., Suite D, Magnolia, TX, 77354 and a regular and established place of business at 318 Magnolia Business Park Dr., Magnolia, TX 77354.

9.     Upon information and belief, ST9, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 331 Corporate Woods Dr., Suite D, Magnolia, TX, 77354 and a regular and established place of business at 318 Magnolia Business Park Dr., Magnolia, TX 77354.

## JURISDICTION AND VENUE

10.     The claims for patent infringement arise under the patent laws of the United States, 35 U.S.C. § 271.

11.     The Court has federal-question subject matter jurisdiction over Plaintiffs' patent infringement claims arising under the patent laws of the United States pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (patents). The Court has federal-question subject matter jurisdiction over Plaintiffs' trade secret misappropriation claim arising under the DTSA pursuant to 28 U.S.C. §§ 1331 (federal question).

12.     The Court has supplemental jurisdiction over USWS's breach of contract, TUTSA, and other state law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy under Article III of the United States Constitution and are based on the same underlying nucleus of fact.

13.     The parties' NDA (as defined below) underlying this matter further provides that the exclusive jurisdiction for litigation of any dispute arising out of the NDA shall be litigated by the parties in the federal or state courts located in Houston, Texas. This Court has personal jurisdiction over Defendants. Defendants have continuous and systematic business contacts with the State of Texas. Defendants, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), conduct business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) products and/or services in the State of Texas and the Southern District of Texas. Defendants maintain locations in Houston, Texas and Magnolia, Texas and are responsible for sales, offers to sell, and/or use of infringing products and services in the United States, including in the Southern District of Texas. Defendants regularly do business or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from products and/or services provided to individuals in the State of Texas.

14.     Defendants, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), have purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents (as defined below) with the intention and expectation that they will be purchased and used by consumers in the

Southern District of Texas. These products and/or services have been and continue to be purchased and used by exploration and production companies in the Southern District of Texas.

15.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) because Defendants haves committed acts of infringement and have a regular and established place of business in this District. Defendants have at least three physical locations in the Southern District of Texas, at an office in Houston at 800 Gessner Rd. Suite 1000, a manufacturing facility in Magnolia at 318 Magnolia Business Park Drive, and a place of business at 331 Corporate Woods Dr., Suite D, Magnolia, TX, 77354. Upon information and belief, Defendants have hundreds or thousands of employees working throughout the state of Texas, including within the Southern District of Texas, and in cities such as Midland, Magnolia, Cibolo, Plano, and many other cites spread out across the state. Upon information and belief, many of these employees across the state work in various capacities on the accused products including digiFrac, and many of these employees working on the accused products also work out of Defendants' Houston office, at 800 Gessner Road Suite 1000, as well as the manufacturing facility in Magnolia at 318 Magnolia Business Park Drive. Upon information and belief, Defendants manufacture digiFrac at the Magnolia facility.

16.     Upon information and belief, the products accused of infringement in this case are manufactured by or on behalf of Defendants.

## FACTUAL BACKGROUND

### I.     USWS's Breakthrough E-Frac Technology

17.     This case involves technology for systems, services, and products for oil and gas exploration and production, particularly relating to well stimulation.

18.     USWS was founded in 2012 with its headquarters in Houston, Texas and provides services at well sites to exploration companies, including hydraulic fracturing services.

19.     In July 2014, USWS successfully deployed Clean Fleet, the first all-electric hydraulic fracturing (E-Frac) system in the fracturing industry. USWS earned public acclaim for this breakthrough, including a New Technology Development Award at the Annual Oil & Gas Awards in March 2015. Clean Fleet has saved USWS customers millions of dollars in operational costs and led to long-term contracts with some of the largest exploration and production companies in the world.

20.     USWS has applied for and obtained dozens of patents relating to E-Frac and continues to be a leading innovator in the oilfield services industry.[1] Owing to USWS's operational and technological success relating to E-Frac, USWS was purchased in 2022 by ProFrac's parent company, which boasts one of the largest number of fleets in the well stimulation industry. Upon information and belief, except for the newly asserted '533 patent, which issued after the filing of the Original Complaint, Defendants were aware of the Asserted Patents. For example, Defendants were aware of Plaintiffs' extensive patent portfolio owing to ST9's close work with USWS. In addition, numerous of Plaintiffs' patents have been cited during the prosecution of Defendants' patents. For example, numerous published patent applications (including one which issued as the asserted '258 Patent) owned by Plaintiffs were cited during the prosecution of multiple of Defendants' patents including U.S. Patent Nos. 11,339,769, 11,598,324, and 11,313,359. All three

---

[1] *See, e.g.*, https://profrac.com/patents/.

of these patents cite USWS patents or applications on their face and were issued prior to the filing of this lawsuit.

## II.   <u>Relationship Between the Parties</u>

21.     Liberty was founded in 2011, with its headquarters in Denver, Colorado, and offices in Houston and Magnolia, Texas.

22.     Liberty provides hydraulic fracturing services and related technologies in oil and natural gas basins, including the Eagle Ford Shale which underlies portions of south Texas, including in the Southern District of Texas.

23.     Liberty advertises that it offers customers hydraulic fracturing services, together with complementary services including wireline services, proppant delivery solutions, data analytics, related goods, and technologies that will facilitate lower emission completions. *See* Liberty 2022 Annual Report and 10K at 36 (March 10, 2023).[2] Included in these services are hydraulic fracturing equipment and services that power pumps with natural gas and electricity, which Liberty markets as "digiFrac." *Id*. at 14.

24.     Liberty acquired ST9 on or around 2018 and claims to have begun developing digiFrac that year. *Id*. at 26.

---

[2] Available at https://investors.libertyfrac.com/~/media/Files/L/Liberty-OilField-IR-V2/financial-information/2020-04-21-liberty-energy-inc-audit-committee-charter-amended.pdf.

25.     ST9 was founded by Chris Buckley in 2017[3] and publicly launched[4] at the 2017 Offshore Technology Conference ("OTC").[5] That same year, ST9 offered a number of products used in hydraulic fracturing, including well service pumps and well stimulation pumps.[6]

26.     On May 25, 2017, ST9 and USWS entered into a Mutual Confidentiality and Nondisclosure Agreement (Exhibit 1) (the "NDA") for the purpose of evaluating a possible business relationship between the parties. NDA, § 1. The NDA remains in force today. To that end, the NDA imposed on the party receiving confidential information strict confidentiality obligations with respect to all information disclosed subject to the agreement. Upon information and belief, ST9 Gas and Oil LLC is an affiliate and/or agent of ST9, Inc. and is thus bound by the NDA. In addition, upon information and belief, ST9 Gas and Oil LLC is a successor of ST9, Inc. and has been assigned ST9, Inc.'s obligations, whether in law or in fact. Moreover, given the misnomer in Plaintiffs' Original Complaint, ST9, Inc. has been added as a Defendant.

27.     USWS engaged ST9 in reliance on ST9's promise to maintain the secrecy of both confidential information provided by USWS and work product created by ST9 for USWS.

28.     Among other restrictions, the NDA states that the party receiving confidential information "will not use it to compete in any direct or indirect manner against the Disclosing

---

[3] *See* https://web.archive.org/web/20231002004118/https://st9go.com/about/.

[4] *See* https://web.archive.org/web/20170503054917/http://www.chron.com/jobs/article/New-projects-products-technology-abound-at-OTC-11107668.php.

[5] Upon information and belief, ST9 Gas is an affiliate entity and/or agent of ST9, Inc. ST9 Gas and ST9, Inc. shared Chris Buckley as the same President and CEO, evidenced by Exhibit 2, Trademark Assignment dated July 3, 2019. *See also* Exhibit 3, ST9, Inc. Delaware Incorporation Documents.

[6] *See* https://www.worldpumps.com/content/news/former-weir-vp-launches-new-company-to-serve-upstream-oil-gas-sector.

Party or deliberately disclose it to others or use such Confidential Information for any reason other than the Purpose or as otherwise authorized under this Agreement…." *Id*. at § 3.1.

29.     Further, the NDA states that a party receiving confidential information "shall not, by itself or in conjunction with another person or entity, construct any duplicate or substantial duplicate of, or analyze or otherwise reverse engineer, any of the products manufactured and sold by the Disclosing Party, or, unless otherwise agreed to in writing by the Disclosing Party, use or construct any products embodying any Confidential information or the Inventions or the Disclosing Party, for use or sale by the Receiving Party or any other purpose." *Id.* at § 3.6.

30.     In or around October 2017, Mr. Buckley and USWS personnel began discussions regarding "Project FOaLT." The concepts disclosed to Mr. Buckley and ST9 by USWS personnel included but weren't limited to a next generation electric hydraulic fracturing fleet.

31.     Upon learning that ST9 had been acquired by Liberty, USWS ended the collaboration. However, the NDA was still in place. Subsequently, ST9 made a LinkedIn post advertising seven- and nine-plunger pumps. Counsel for USWS then sent a letter to Liberty in March 2020 (the "Letter") alleging breach of the NDA by disclosing USWS's confidential information as to the seven- and nine-plunger pumps. A true and correct copy of the Letter dated March 13, 2020 is attached as Exhibit 4. Mr. Buckley responded stating that he would look into the matter and follow-up within thirty days, but no follow-up was ever received by USWS.

32.     However, more than one year later, Liberty and ST9 launched digiFrac in 2021, which, upon information and belief, incorporates many of the elements originally disclosed to ST9 by USWS personnel in violation of the NDA.[7]

## DEFENDANTS AND THEIR INFRINGING PRODUCTS AND SERVICES

33.     Defendants market digiFrac to customers, which they allege is "the industry's first purpose-built fully integrated electric frac pump with high power density and significantly lower emissions relative to the best next generation frac technology available in the market."[8] Defendants also describe digiFrac as utilizing ten small electric motors to power each pump.[9]



34.     Defendants further describe digiFrac as containing "[b]espoke gear reducer transmissions," "[d]ual VFDs for rectifying and modulating power to the motors," and "[i]ntelligent control via Telematics Suite for ultra-fine control, remote capability, and AI

---

[7] *See* https://investors.libertyfrac.com/press-releases/2021/07-07-2021-113010665.
[8] *See* https://investors.libertyfrac.com/press-releases/2021/07-07-2021-113010665.
[9] Available at https://investors.libertyfrac.com/~/media/Files/L/Liberty-OilField-IR-V2/financial-information/2020-04-21-liberty-energy-inc-audit-committee-charter-amended.pdf.

integration".[10] While Plaintiffs had become aware of Defendants' plans to use seven- and nine-plunger pumps in March 2020, Plaintiffs were surprised to learn of Defendants use of the aforementioned products that duplicated, substantially duplicated, or used Plaintiffs' confidential information. Plaintiffs could not have had knowledge in March 2020 for Defendants later release of products in 2021 that included additional proprietary elements beyond the seven- and nine-plunger pump configuration.



[10] *See* digiFrac Product Specifications, available at https://web.archive.org/web/20221129010242/https://st9go.com/wp-content/uploads/2021/11/20-ST9-0035_ProductSheet_digiFrac.pdf; *see also* https://web.archive.org/web/20240603021619/https://libertyenergy.com/wp-content/uploads/2022/03/digifrac-marketing-sheet-web.pdf.

35.     The aforementioned confidentiality obligations remain in full force under the terms of the NDA, which has never been terminated by either party. Moreover, by its terms, the foregoing obligations survive even termination of the NDA. The NDA expressly acknowledges that breach of confidentiality obligations may cause irreparable harm for which money is inadequate compensation, and that the disclosing party may be entitled to equitable relief by way of injunction.

## THE ASSERTED PATENTS

36.     Plaintiffs are the owners in right, title, and interest in and to multiple United States patents and patent applications, including U.S. Patent Nos. 11,959,533 (the "'533 Patent"), 10,598,258 (the "'258 Patent"), 11,091,992 (the "'992 Patent"), 10,655,435 (the "'435 Patent"), and 11,208,878 (the "'878 Patent") (collectively, the "Asserted Patents"). The Asserted Patents are valid and enforceable, and the inventions claimed in the Asserted Patents were novel, non-obvious, unconventional, and non-routine at least as of their respective filing dates.

37.     On April 16, 2024, the '533 Patent, entitled "Multi-Plunger Pumps and Associated Drive Systems," was duly and legally issued. Plaintiffs own the entire right, title, and interest in the '533 Patent and are entitled to sue for past and future infringement. A true and correct copy of the '533 Patent is attached as Exhibit 5.

38.     On March 24, 2020, the '258 Patent, entitled "Multi-Plunger Pumps And Associated Drive Systems," was duly and legally issued. Plaintiffs own the entire right, title, and interest in the '258 Patent and are entitled to sue for past and future infringement. A true and correct copy of the '258 Patent is attached as Exhibit 6.

39.     On August 17, 2021, the '992 Patent, entitled "System For Centralized Monitoring And Control Of Electric Powered Hydraulic Fracturing Fleet," was duly and legally issued.

Plaintiffs own the entire right, title, and interest in the '992 Patent and are entitled to sue for past and future infringement. A true and correct copy of the '992 Patent is attached as Exhibit 7.

40.     On May 19, 2020, the '435 Patent, entitled "Smart Fracturing System And Method" was duly and legally issued. Plaintiffs own the entire right, title, and interest in the '435 Patent and are entitled to sue for past and future infringement. A true and correct copy of the '435 Patent is attached as Exhibit 8.

41.     On December 28, 2021, the '878 Patent, entitled "Modular Switchgear System And Power Distribution For Electric Oilfield Equipment," was duly and legally issued. Plaintiffs own the entire right, title, and interest in the '878 Patent and are entitled to sue for past and future infringement. A true and correct copy of the '878 Patent is attached as Exhibit 9.

## COUNT I: CLAIM FOR PATENT INFRINGEMENT OF THE '533 PATENT

42.     Plaintiffs repeat and reallege the allegations in paragraphs 1–34 and 36–41 as if fully set forth herein.

43.     Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '533 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '533 Patent including, but not limited to, hydraulic fracturing systems and components thereof.

44.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '533 Patent include at least the digiFrac product line. The product listed is exemplary, and Plaintiffs will be able to provide a more comprehensive list after discovery.

45.     For example, upon information and belief, Defendants' digiFrac system infringes at least claim 1 of the '533 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States their electric hydraulic fracturing equipment and services and thus directly infringe the '533 Patent.

## COUNT II: CLAIM FOR PATENT INFRINGEMENT OF THE '258 PATENT

46.     Plaintiffs repeat and reallege the allegations in paragraphs 1–34 and 36–41 as if fully set forth herein.

47.     Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '258 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '258 Patent including, but not limited to, hydraulic fracturing systems and components thereof.

48.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '258 Patent include at least the digiFrac product line. The product listed is exemplary, and Plaintiffs will be able to provide a more comprehensive list after discovery.

49.     For example, upon information and belief, Defendants' digiFrac system infringes at least claim 1 of the '258 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States their electric hydraulic fracturing equipment and services and thus directly infringe the '258 Patent.

## COUNT III: CLAIM FOR PATENT INFRINGEMENT OF THE '992 PATENT

50.     Plaintiffs repeat and reallege the allegations in paragraphs 1–34 and 36–41 as if fully set forth herein.

51.     Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '992 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '992 Patent including, but not limited to, hydraulic fracturing systems and components thereof.

52.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '992 Patent include at least the digiFrac product line. The product listed is exemplary, and Plaintiffs will be able to provide a more comprehensive list after discovery.

53.     For example, upon information and belief, Defendants' digiFrac system infringes at least claim 1 of the '992 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States their electric hydraulic fracturing equipment and services and thus directly infringe the '992 Patent.

## COUNT IV: CLAIM FOR PATENT INFRINGEMENT OF THE '435 PATENT

54.     Plaintiffs repeat and reallege the allegations in paragraphs 1–34 and 36–41 as if fully set forth herein.

55.     Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '435 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '435 Patent including, but not limited to, hydraulic fracturing systems and components thereof.

56.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '435 Patent include at least the digiFrac product line. The product listed is exemplary, and Plaintiffs will be able to provide a more comprehensive list after discovery.

57.     For example, upon information and belief, Defendants' digiFrac system infringes at least claim 1 of the '435 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States their electric hydraulic fracturing equipment and services and thus directly infringe the '435 Patent.

## COUNT V: CLAIM FOR PATENT INFRINGEMENT OF THE '878 PATENT

58.     Plaintiffs repeat and reallege the allegations in paragraphs 1–34 and 36–41 as if fully set forth herein.

59.     Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '878 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '878 Patent including, but not limited to, hydraulic fracturing systems and components thereof.

60.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '878 Patent include at least the digiFrac product line. The product listed is exemplary, and Plaintiffs will be able to provide a more comprehensive list after discovery.

61.     For example, upon information and belief, Defendants' digiFrac system infringes at least claim 1 of the '878 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States their electric hydraulic fracturing equipment and services and thus directly infringe the '878 Patent.

16

## COUNT VI: CLAIM FOR VIOLATION OF THE DTSA, 18 U.S.C. § 1832, *et seq.*

62.     Plaintiffs repeat and reallege the allegations in paragraphs 1–35 as if fully set forth herein.

63.     USWS was the first company to commercially deploy an electric fracturing fleet, doing in so in 2014. In the following years, USWS made a commitment to growing their number of electric fleets and decommissioning conventional (diesel) fleets to become a 100% electric frac company. By the time that USWS began working with ST9 to design its fourth-generation electric hydraulic fracturing fleet, USWS had already designed, deployed, and operated three generations of hydraulic fracturing fleets over the course of  years, developing considerable technical know-how in the process.

64.     While USWS made efforts to acquire and maintain a voluminous patent portfolio, significant amounts of information were known to USWS engineers that were never disclosed to the public or put into the public domain. For example, there were problems associated with the speeds at which electric motors and hydraulic fracturing pumps most efficiently and effectively operate, given that electric motors most efficiently operate at speeds different than what would be ideal for hydraulic fracturing pumps. USWS gained data, experience, and operating protocols regarding these concepts over its years of experience in operating electrically driven hydraulic fracturing equipment and this information, not known to its competitors, had value to USWS. USWS disclosed confidential solutions relating to the aforementioned problems to ST9, along with other confidential information relating to the use of electric motors to drive hydraulic fracturing equipment and the unique issues posed. Before the relationship, ST9 had not built any electric

fracturing equipment, and its engineers gained considerable knowledge from USWS personnel through the development of the USWS Gen 4 hydraulic fracturing equipment.

65.     Project FOaLT information that Plaintiffs provided to Defendants includes technical and engineering information, both tangible and intangible.

66.     At all times relevant, Plaintiffs have taken reasonable measures to keep Project FOaLT information secret. Among other measures, Plaintiffs maintained an acceptable use policy, a physical security policy, a password security policy, a cloud computing policy, a third-party management policy, an employee laptop and computer policy, and a malware incident response policy.

67.     Plaintiffs' Project FOaLT information disclosed to Defendants included at least the following trade secrets (as that term is defined in 18 U.S.C. § 1839(3)): Project FOaLT technical specifications; Project FOaLT design work; Project FOaLT functional plans; and proprietary knowledge about the design, testing, manufacturing, and assembly of electric hydraulic fracturing equipment.

68.     Much of this trade secret information was disclosed in documentary or presentation form to Defendants. The documents and information provided to Defendants as alleged in this paragraph derive actual and potential independent economic value from not being generally known to, and not being readily ascertainable through proper means by, third parties.

69.     Without Plaintiffs' consent, Defendants used Plaintiffs' Project FOaLT trade secret information. Defendants were aware that Plaintiffs' Project FOaLT information comprised trade secrets, and that it was improper to disclose and/or use Plaintiffs' trade secrets in the manner alleged.

70.     Upon information and belief, ST9 later used that technical knowledge to develop digiFrac in conjunction with Liberty, who had also never deployed electrically driven hydraulic fracturing equipment.

71.     Defendants' conduct violates the DTSA.

72.     Plaintiffs sent ST9 the Letter on March 13, 2020, complaining about issues related to the seven- and nine-plunger pumps. At that time, Defendants were only aware of ST9's use of Plaintiffs' confidential information relating to pump configuration. For example, the Letter to ST9 does not mention digiFrac nor electrically driven hydraulic fracturing equipment. It was not until, at the earliest, July 7, 2021 that Plaintiffs realized that Defendants theft of Plaintiffs' confidential information extended beyond the number of plungers, through Defendants' press release titled "LIBERTY ANNOUNCES SUCCESSFUL DIGIFRAC™ ELECTRIC FRAC PUMP FIELD TEST." There is a significant difference between a mere pump plunger configuration, and an entire trailer containing an electrically driven hydraulic fracturing pump along with associated motors and other equipment required as shown below.



| | | POWERPLANT: 10x410kW (550HP)MOTORS | TOTAL OUTPUT: 4000HP CONTINUOUS 5500HP INTERMITTENT | MASS LBS: 33,400 PER UNIT |

## ELECTRIFYING PERFORMANCE:

Intelligent control via Telematics Suite for ultra-fine control, remote capability, and AI integration

Bespoke gear reducer transmissions for maximum efficiency

Dual VFDs for rectifying and modulating power to the motors

Field-proven XGEN technologies employed in Septuplex Power End

XGEN Septuplex fluid end provides +40% more fluid area to harness max power

FULLY-INTEGRATED RIG WITH RETRACTABLE HOUSING

## ADVANTAGES:

> Reduced maintenance and repair costs
> Reduced total manpower requirements
> Greatly reduced fuel costs
> Reduced noise pollution
> Lowest emissions: kW downhole

73. After July 7, 2021, Plaintiffs were able to learn other information concerning the digiFrac system and determine that it utilized the aforementioned confidential information and trade secrets disclosed to ST9.

74. Defendants' unauthorized use of Plaintiffs' trade secret information has proximately caused Plaintiffs irreparable harm that can only be remedied by injunctive relief.

75. Defendants' conduct was willful, malicious, and carried out with conscious disregard for Plaintiffs' rights.

76. Plaintiffs are entitled to damages for actual loss and unjust enrichment, exemplary damages, attorney's fees, and injunctive relief on account of Defendants' violation of the DTSA.

## COUNT VII: CLAIM FOR VIOLATION OF THE TUTSA, Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001, TO 134A.008

77.     Plaintiffs repeat and reallege the allegations in paragraphs 1–35 as if fully set forth herein.

78.     USWS was the first company to commercially deploy an electric fracturing fleet, doing in so in 2014. In the following years, USWS made a commitment to growing their number of electric fleets and decommissioning conventional (diesel) fleets to become a 100% electric frac company. By the time that USWS began working with ST9 to design its fourth-generation electric hydraulic fracturing fleet, USWS had already designed, deployed, and operated three generations of hydraulic fracturing fleets over the course of years, developing considerable technical know-how in the process.

79.     While USWS made efforts to acquire and maintain a voluminous patent portfolio, significant amounts of information were known to USWS engineers that were never disclosed to the public or put into the public domain. For example, there were problems associated with the speeds at which electric motors and hydraulic fracturing pumps most efficiently and effectively operate, given that electric motors most efficiently operate at speeds different than what would be ideal for hydraulic fracturing pumps. USWS gained data, experience, and operating protocols regarding these concepts over its years of experience in operating electrically driven hydraulic fracturing equipment and this information, not known to its competitors, had value to USWS. USWS disclosed confidential solutions relating to the aforementioned problems to ST9, along with other confidential information relating to the use of electric motors to drive hydraulic fracturing equipment and the unique issues posed. Before the relationship, ST9 had not built any electric

fracturing equipment, and its engineers gained considerable knowledge from USWS personnel through the development of the USWS Gen 4 hydraulic fracturing equipment.

80.     Project FOaLT information that Plaintiffs provided to Defendants includes technical and engineering information, both tangible and intangible.

81.     At all times relevant, Plaintiffs have taken reasonable measures to keep Project FOaLT information secret. Among other measures, Plaintiffs maintained an acceptable use policy, a physical security policy, a password security policy, a cloud computing policy, a third-party management policy, an employee laptop and computer policy, and a malware incident response policy.

82.     Plaintiffs' Project FOaLT information disclosed to Defendants included at least the following trade secrets (as that term is defined in Section 134A(6) of the Texas Civil Practice and Remedies Code): Project FOaLT technical specifications; Project FOaLT design work; Project FOaLT functional plans; and proprietary knowledge about the design, testing, manufacturing, and assembly of electric hydraulic fracturing equipment.

83.     Much of this trade secret information was disclosed in documentary or presentation form to Defendants. The documents and information provided to Defendants as alleged in this paragraph derive actual and potential independent economic value from not being generally known to, and not being readily ascertainable through proper means by, third parties.

84.     Without Plaintiffs' consent, Defendants used Plaintiffs' Project FOaLT trade secret information. Defendants were aware that Plaintiffs' Project FOaLT information comprised trade secrets, and that it was improper to disclose and/or use Plaintiffs' trade secrets in the manner alleged.

85.     Upon information and belief, ST9 later used that technical knowledge to develop digiFrac in conjunction with Liberty, who had also never deployed electrically driven hydraulic fracturing equipment.

86.     Defendants' conduct violates the TUTSA.

87.     Plaintiffs sent ST9 the Letter on March 13, 2020, complaining about issues related to the seven- and nine-plunger pumps. At that time, Defendants were only aware of ST9's use of Plaintiffs' confidential information relating to pump configuration. For example, the Letter to ST9 does not mention digiFrac nor electrically driven hydraulic fracturing equipment. It was not until, at the earliest, July 7, 2021 that Plaintiffs realized that Defendants theft of Plaintiffs' confidential information extended beyond the number of plungers, through Defendants' press release titled "LIBERTY ANNOUNCES SUCCESSFUL DIGIFRAC™ ELECTRIC FRAC PUMP FIELD TEST." There is a significant difference between a mere pump plunger configuration, and an entire trailer containing an electrically driven hydraulic fracturing pump along with associated motors and other equipment required as shown below.



| | | POWERPLANT:<br>10x410kW<br>(550HP)MOTORS | TOTAL OUTPUT:<br>4000HP CONTINUOUS<br>5500HP INTERMITTENT | MASS LBS:<br>33,400<br>PER UNIT |

**ELECTRIFYING PERFORMANCE:**

Intelligent control via Telematics Suite for ultra-fine control, remote capability, and AI integration

Bespoke gear reducer transmissions for maximum efficiency

Dual VFDs for rectifying and modulating power to the motors

Field-proven XGEN technologies employed in Septuplex Power End

XGEN Septuplex fluid end provides +40% more fluid area to harness max power

FULLY-INTEGRATED RIG WITH RETRACTABLE HOUSING

**ADVANTAGES:**

> Reduced maintenance and repair costs
> Reduced total manpower requirements
> Greatly reduced fuel costs
> Reduced noise pollution
> Lowest emissions: kW downhole

88. After July 7, 2021, Plaintiffs were able to learn other information concerning the digiFrac system and determine that it utilized the aforementioned confidential information and trade secrets disclosed to ST9.

89. Defendants' unauthorized use of Plaintiffs' trade secret information has proximately caused Plaintiffs irreparable harm that can only be remedied by injunctive relief.

90. Defendants' conduct was willful, malicious, and carried out with conscious disregard for Plaintiffs' rights.

91. Plaintiffs are entitled to damages for actual loss and unjust enrichment, exemplary damages, attorney's fees, and injunctive relief on account of Defendants' violation of the TUTSA.

## COUNT VIII: CLAIM FOR BREACH OF CONTRACT

92.     Plaintiffs repeat and reallege the allegations in paragraphs 1–35 as if fully set forth herein.

93.     Plaintiff USWS and Defendant ST9 are parties to a valid, existing contract: the NDA.

94.      Under the NDA, the parties' agents and affiliates were required, *inter alia*, to ensure confidential information was not disclosed to third-parties. NDA § 3.1. Further, the parties agreed under the NDA to not construct any duplicate or substantial duplicate, analyze or otherwise reverse engineer, or use or construct any of the products manufactured and sold by" the party disclosing the confidential information. *Id.* at § 3.6. Plaintiffs have performed their obligations under the NDA.

95.     Defendants have breached their obligations under the NDA by making unauthorized disclosures and/or use of USWS's confidential information.

96.     Defendants' breaches have proximately caused USWS and ProFrac foreseeable monetary harm in an amount to be proven at trial.

97.     Defendants' breaches have proximately caused Plaintiffs irreparable injury that can only be remedied by an order of injunctive relief.

## DEMAND FOR JURY TRIAL

98.     Plaintiffs hereby demand a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

A. Entry of judgment in favor of Plaintiffs against Defendants on all counts;

B. A judgment and order that Defendants infringe the Asserted Patents;

C. A judgment and order that the Asserted Patents are valid and enforceable;

D. Award Plaintiffs damages in an amount adequate to compensate Plaintiffs for Defendants' infringement of the Asserted Patents, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

E. A judgment and order awarding Plaintiffs damages caused by Defendants' breach of contract;

F. A judgment and order awarding Plaintiffs damages caused by Defendants' misappropriation of trade secrets and/or disgorgement of any ill-gotten profits and/or a reasonable royalty;

G. Award enhanced damages pursuant to 35 U.S.C. § 284;

H. Award Plaintiffs pre-judgment and post-judgment interest to the full extent allowed under the law, as well as their costs;

I. Enter an order finding that this is an exceptional case and awarding Plaintiffs their reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

J. Enter a permanent injunction against all of Defendants' products found to infringe the Asserted Patents;

K. An order requiring Defendants to comply with the NDA, including § 3.6 prohibiting the use or construction of any products embodying any confidential information or the inventions of the Plaintiffs, for use or sale by the Defendants or any other purpose;

L.  An order permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, affiliated companies, assigns and successors in interest, and all persons and entities acting in concert with them, from misappropriating Plaintiffs' trade secrets;

M.  An order permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, affiliated companies, assigns and successors in interest, and all persons and entities acting in concert with them, from breaching the NDA;

N.  Award, in lieu of an injunction, a compulsory forward royalty for infringement of the Asserted Patents;

O.  Order an accounting of damages;

P.  An award of attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code Section 38.001, and the applicable provisions under the DTSA and TUTSA; and

Q.  Award such other relief, including equitable relief, as the Court may deem appropriate and just under the circumstances.

**DATED**: June 3, 2024

Respectfully submitted,

*/s/ Thomas M. Melsheimer*
**Thomas M. Melsheimer**
Texas Bar No. 13922550
S.D. Bar No. 23709
TMelsheimer@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

**ATTORNEY IN CHARGE**

**Rex A. Mann**
Texas Bar No. 24075509
S.D. Bar No. 1750609
RMann@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

**E. Danielle T. Williams** (*pro hac vice* forthcoming*)*
North Carolina Bar No. 23283
DWilliams@winston.com
**WINSTON & Strawn LLP**
300 S. Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: (704) 350-7790
Facsimile: (704) 350-7800

**Richard T. McCarty**
Texas Bar No. 24074675
S.D. Bar No. 1147407
RMcCarty@winston.com
**J. Tyler Boyce**
Texas Bar No. 24127214
S.D. Bar No. 3877314
TBoyce@winston.com
**WINSTON & STRAWN LLP**

28

800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

**ATTORNEYS FOR PLAINTIFFS**